**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Southern Glazer's Wine and Spirits, LLC, | ) | |
| Movant, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| Mexcor, Inc., | ) | |
| Respondent. | ) | |
| Federal Trade Commission, | ) | |
| Plaintiff, | ) | *Underlying Action Pending in the* |
| v. | ) | United States District Court for the Central District of California |
| Southern Glazer's Wine and Spirits, LLC, | ) | Case No. 8:24-cv-02684-FWS-ADS |
| Defendant. | ) | |

## MOVANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

### INTRODUCTION

On August 18, 2025, Southern Glazer's Wine and Spirits, LLC ("SGWS") served a subpoena duces tecum on Mexcor, Inc. ("Mexcor"), an alcohol distributor headquartered in Houston, Texas. Like Mexcor, SGWS distributes wine and spirits products across the United States, including California, Florida, Louisiana, South Carolina, and Texas. Currently, SGWS is defending a suit brought by the Federal Trade Commission ("FTC") that alleges SGWS engaged in discriminatory pricing practices in violation of the Robinson-Patman Act ("RPA"), a bygone act that has not been enforced

1

in a quarter century. *FTC v. Southern Glazer's Wine and Spirits, LLC,* No. 8:24-cv-02684-FWS-ADS (C.D. Cal. Dec. 12, 2024). The FTC seeks a nationwide injunction that would force SGWS to change its pricing practices. If granted, this sweeping relief will interfere with the already heavily regulated beverage alcohol industry, to consumers' detriment.

The documents SGWS seeks from Mexcor are relevant to SGWS's defenses, not unduly burdensome, and proportional to the needs of the case. The subpoena seeks documents concerning Mexcor's wine and spirits purchases, sales, pricing and accounting practices, and interactions with suppliers who manufacture alcohol. *See* Ex. 1 (SGWS Subpoena). SGWS expects these documents will support its arguments that (1) any retailers to whom it charged different prices for the same goods do not compete, (2) SGWS's pricing practices are justified by market conditions, differences in the cost of serving different retailers, and SGWS's legitimate efforts to meet competition, and (3) alcohol sales from distributors to retailers occur outside of interstate commerce and are not subject to the RPA. The breadth of SGWS's requests mirrors the wide scope of the FTC's allegations. To date, the FTC has identified over 17 million different pairs of allegedly discriminatory sales by SGWS to retailers in 30 states since 2018, each of which the FTC contends is an individual violation of the RPA. Given Mexcor's significant business in these states of interest, data on Mexcor's wine and spirits sales and purchases will be particularly relevant to SGWS's defenses.

In response to SGWS's subpoena, Mexcor sent a letter objecting to the requests in their entirety and indicating no documents would be produced. *See* Ex. 3 (10/01/2025

Mexcor Letter). SGWS then served an amended subpoena identical to the initial subpoena except for seeking information about additional states where Mexcor operates. Ex. 2 (SGWS Amended Subpoena). Mexcor objected to this subpoena in its entirety as well. Ex. 5 (02/06/2026 Mexcor Letter). Counsel for SGWS and Mexcor conferred three times regarding the subpoenas, and each time, SGWS offered to explore narrowing specific requests in the interest of compromise. On each occasion, Mexcor refused to negotiate, standing on the objections stated in its letter.

Mexcor's vague objections do not justify its refusal to produce documents in their entirety. The information SGWS seeks is relevant and proportionate to its defenses. Mexcor offers no support for its conclusory claims of irrelevance, burden, and expense, and SGWS is unable to access Mexcor's documents—or anything substantially similar— from another source. *See* Ex. 5. Moreover, the protective order in the underlying litigation will maintain the confidentiality of Mexcor's information, *see* Ex. 1, Exhibit C (Amended Stipulated Protective Order). SGWS thus respectfully moves the Court pursuant to Federal Rules of Civil Procedure 37 and 45 to compel Mexcor to produce documents responsive to its subpoena.

## FACTUAL BACKGROUND

SGWS is a family-owned distributor of alcoholic beverages, operating in forty-seven markets across the United States. SGWS purchases beverages from suppliers and subsequently sells them to retailers of all sizes, from large chains such as Costco to local gas stations. Over the objection of now-Chairman Andrew Ferguson and former Commissioner Melissa Holyoak, the FTC filed a complaint against SGWS in the Central

3

District of California on December 12, 2024.  The complaint alleges that since 2018, SGWS has engaged in price discrimination in millions of transactions, in violation of Section 2(a) of the RPA and Section 5 of the FTC Act, by selling various brands of wine and spirits to independent retailers at higher prices than to chain customers.  *See FTC v. Southern Glazer's Wine and Spirits, LLC,* Compl.  (ECF 57) at ¶¶ 1-6, 85-88 (attached to Ex. 1 as Exhibit A).

Enacted in 1936, Section 2(a) of the RPA seeks to prevent anticompetitive practices by prohibiting sellers from pricing commodities differently to buyers.  15 U.S.C. §13(a).  To establish a violation, a party must show that (1) the challenged sales were made in interstate commerce; (2) the commodities sold were of the same grade and quality; (3) the seller discriminated in price between the disfavored and the favored purchasers; and (4) the discrimination has a prohibited effect on competition.  *Infusion Res., Inc. v. Minimed, Inc.*, 351 F.3d 688, 692 (5th Cir. 2003).  The last element ensures that not all pricing discrimination is banned—only that which threatens to injure competition.  *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006).  Changes in price can be legitimate where they are made "in response to changing conditions affecting the market for or the marketability of the goods." 15 U.S.C. §13(a).  The RPA offers defendants two affirmative defenses to rebut a prima facie case: Differences in price are permissible where (1) they account for differences in cost due to the manufacture, sale, or delivery of a commodity, or (2) they reflect an effort to meet competition.  15 U.S.C. §13(a)-(b).  Similarly, Section 5 of the FTC Act aims to prevent anticompetitive practices.  However, absent evidence of antitrust law violations or

4

collusive or similar conduct, a party's practices are not considered "unfair" under Section 5. *E.I. du Pont de Nemours & Co. v. F.T.C.*, 729 F.2d 128, 140 (2d Cir. 1984).

As the FTC acknowledges in its complaint, the market for alcoholic beverages is unique. It is a "non-integrated distribution system regulated by each state and requiring three distinct tiers." Compl. ¶ 24 (Ex. 1 at Exhibit A). Within this three-tiered system, suppliers of alcohol (such as distillers and vintners) may sell wine and spirits products only to distributors (the second tier), who in turn re-sell them to retailers (the third tier), who finally sell the products to consumers. *See id.; see generally ROKiT Drinks, L.L.C. v. Landry's Inc.,* 2025 WL 2269783, at *3 (5th Cir. Aug. 8, 2025) (per curiam) (quoting *Dickerson v. Bailey*, 336 F.3d 388, 397 (5th Cir. 2003)) (explaining the strict separation of ownership and operations between manufacturers, wholesalers, and retailers that prevents their vertical integration).

Under the Twenty-First Amendment, states have unique constitutional authority to regulate alcohol sales and do so in varied ways. *See* U.S. Const. amend. XXI. For example, several states, including Texas, impose "come to rest" laws mandating that alcohol become part of a distributor's in-state inventory before it is sold to retailers. *See* Tex. Alco. Bev. Code § 6.03(i) ("It is also the public policy of this state… to maintain and enforce the three-tier system (strict separation between the manufacturing, wholesaling, and retailing levels of the industry)").

Notwithstanding the state-specific nature of the market, the FTC seeks a sweeping nationwide injunction forcing SGWS to change its pricing practices. SGWS has pressed the FTC to identify specific transactions the FTC alleges violate the RPA and served an

interrogatory requesting that the FTC describe each alleged instance of unlawful price discrimination with specificity. In stages, over several months, the FTC provided some of the requested information, eventually identifying over 17 million transactions in 30 states that are allegedly probative of an RPA violation. SGWS understands the FTC may supplement this list of transactions further.

SGWS denies the FTC's allegations. SGWS argues its practices are lawful because any differences in price are cost-justified, designed to meet competition, and/or responsive to changed market conditions. SGWS intends to show that many of the millions of transactions the FTC has alleged to date pair retailers that do not actually compete and so cannot give rise to an RPA claim. *See* 15 U.S.C. § 13(a). SGWS also maintains that the sales at issue are not in interstate commerce—an essential element of the RPA claim—because SGWS does not sell alcohol across state lines and instead abides by the various states' "come-to-rest" laws in the tightly regulated alcohol industry.

To help support these defenses, SGWS began issuing subpoenas to eleven beverage distributors in August 2025. Some of these distributors are large national players like SGWS. Others, like Mexcor, have significant presences in the five exemplar states that the FTC focuses on in its complaint. Of the 17 million allegedly illegal transactions that the FTC alleges, almost half of these—8 million—are in Texas, and another half million are in California. Mexcor has a large presence in these exemplar states. It is the third largest spirits and wine distributor in Texas, with over two million

6

cases sold annually; and it is the fifth largest in California, totaling a delivery every 1.25 seconds for the distributor.[1]

The subpoenas SGWS served on distributors each include the same fourteen requests. *See* Ex. 1. The requests seek transaction data for other distributors' purchases and sales of wine and spirits, and other information that would support and give context to that data, such as documents that show how the distributor determines its pricing, manages its costs, and complies with state laws. *See* Ex. 1. This information will help SGWS demonstrate the pro-competitive nature of its pricing practices and provide support for the affirmative defenses recognized under the Act. Specifically, it will showcase that SGWS charges different prices to different retailers based on cost or a good faith effort to adapt to market conditions and meet competition. The requests seek documents "from January 1, 2020, to present," related to "distilled spirits and wine…not…beer." *See* Ex. 1, Instructions ¶ 3, Definitions ¶¶ 2, 12.

On September 8, 2025, counsel for SGWS and Mexcor spoke by phone. Counsel for SGWS gave background on the case and agreed to an extension to October 1, 2025, for Mexcor to respond to the subpoena. On October 1, 2025, Mexcor responded to SGWS's subpoena with a brief letter objecting to all the subpoena's requests. *See* Ex. 3. The next day, SGWS served a revised subpoena that added additional relevant states but otherwise was identical in substance to the previous subpoena. *See* Ex. 2, Ex. 4.

---

[1]    California Distribution Portfolio 2-3. Mexcor, https://mexcor.com/distribution/california-distribution-portfolio/ (last accessed Feb. 9, 2026).

SGWS then conferred with Mexcor three times before filing this motion.  Counsel met by videoconference on October 7, 2025, where SGWS provided additional background on the underlying litigation brought by the FTC and explained its need for the requested data.  SGWS also offered to further confer about the requests, including potentially narrowing the scope.  The parties conferred again on November 19, 2025, and SGWS reiterated its willingness to negotiate narrowed production requests.  On December 4, 2025, SGWS reached out again to see if Mexcor would be willing to engage in discussion; after receiving no response for over a month, SGWS followed up on January 7, 2026.  Ex. 4.  Because SGWS had not heard from Mexcor in over six weeks, SGWS determined it needed to proceed with a motion to compel and asked Mexcor whether it would accept service by email.  Ex. 4.  It is only then—two days later, on January 22, 2026—that Mexcor responded, requesting a call to discuss questions.  Ex. 4. Even after this request, however, Mexcor continued to miss proposed windows for conversation by failing to respond.  *See* Ex. 4.

SGWS was finally able to speak with Mexcor by phone on January 23, 2026. There, Mexcor argued that it never officially accepted service of the amended subpoena—even though Mexcor had met and conferred with SGWS in November about the amended subpoena.  Mexcor had never previously raised service as an issue, and this belated assertion is consistent with Mexcor's pattern of delay.  Nevertheless, SGWS offered during this call to narrow its data requests as a compromise.  Specifically, SGWS offered to limit its requests for data to the 100 best-selling products (by volume) each for wine and spirits.  SGWS also agreed Mexcor would have two weeks to respond to the

amended subpoena—which had been sent to Mexcor's counsel more than three and a half months ago. *See* Ex. 4. Mexcor served a response to the amended subpoena on February 6, 2026. Ex. 5. The new response was identical to Mexcor's prior response, except that Mexcor removed its incorrect objection that the subpoena was issued by the wrong court—as SGWS pointed during a meet-and-confer. *See* Ex. 3, Ex. 5. SGWS and Mexcor are thus at an impasse. Accordingly, SGWS now respectfully moves this Court to compel Mexcor to produce documents responsive to SGWS's requests.

## LEGAL STANDARD

A Rule 45 subpoena is subject to the same scope of discovery as is permitted under Rule 26. *Compass Bank v. Williams*, 2015 WL 12803711, at *2 (S.D. Tex. Feb. 4, 2015). Rule 26(b)(1) provides that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). *See also Kiewit Offshore Servs., Ltd. v. Dresser-Rand Glob. Servs., Inc.,* 2016 WL 6905874, at *2 (S.D. Tex. Apr. 1, 2016). For antitrust cases, courts construe discovery rules more liberally. *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, 2025 WL 2432665, at *2 (N.D. Tex. Aug. 22, 2025). "This means the 'burden or cost of providing the information sought is less weighty a consideration than in other cases.'" *Id.* at *2 (quoting *New Park Ent., LLC v. Elec. Factory Concerts, Inc.*, 2000 WL 62315, at *3 (E.D. Pa. Jan. 13, 2000)).

Relevancy for purposes of discovery is defined broadly and interpreted liberally to encompass any matter that could lead to or bear on any issue in the case. *Smith v. Harris Cnty., Texas*, 2017 WL 11845922, at *2 (S.D. Tex. July 18, 2017) (quoting *Oppenheimer*

9

*Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  Proportionality is determined by several factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  *See also Edwards v. McDermott Int'l, Inc.,* 2022 WL 1568279, at *2 (S.D. Tex. May 18, 2022).  A party objecting to discovery on the grounds of proportionality bears the burden of making specific objections showing that discovery fails the proportionality calculation.  *Id*.  District courts have broad discretion in controlling discovery.  *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006).

**ARGUMENT**

Mexcor's objections—that the subpoena is invalid and that its requests are irrelevant, overbroad, unduly burdensome, and seek confidential information—are without basis.  *See* Ex. 5.  First, the subpoena is valid and enforceable—it addresses an appropriate entity.  Second, the information sought is relevant and proportional to the broad case brought by the FTC—it will support SGWS's meeting competition and cost justification affirmative defenses and its ability to rebut the FTC's prima facie case.  Third, SGWS cannot obtain this information from any other source.  And fourth, the protective order addresses any confidentiality concerns.  Therefore, the Court should compel production.

10

### (a)   SGWS's Subpoena Is Valid

Mexcor first challenges the validity of the subpoena itself by arguing the subpoena is defective because it is addressed to Mexcor's trade name, Mexcor International, not legal name, Mexcor Inc.  *See* Ex. 5.  This claim bears no merit.

A subpoena is not invalid because it is addressed to a trade name rather than the legal entity.  Rather, the question is "whether, on the basis of an objective standard, it is reasonable to conclude that the party had in mind a particular entity or person, merely made a mistake as to the name, and actually served the entity or person intended; or whether plaintiff actually meant to serve and sue a different person."  *Jackson v. Duke*, 259 F.2d 3, 7 (5th Cir. 1958) (quoting *Grandey v. Pac. Indem. Co.*, 217 F.2d 27, 29 (5th Cir. 1954)) (allowing the case to proceed because there was "no doubt" that the defendant was the intended party).  Consistent with this principle, courts construe Rule 4(a)'s requirement, that the summon name the party, liberally.  *Infotronics Corp. v. Varian Assocs. Corp.*, 45 F.R.D. 91, 93 (S.D. Tex. 1968) ("The Fifth Circuit has repeatedly given… a liberal construction where it was clear that the party served was the party intended… and the naming of another… was an inadvertent misnomer."); *Est. of White v. Hartford Life & Acc. Ins. Co.*, 2007 WL 7217079, at *2 (S.D. Tex. Oct. 11, 2007).  A harmless error does not invalidate a summons, and a party may not "take advantage of a mere misnomer that injured no one."  *Est. of White.*, 2007 WL 7217079, at *2 (quoting *Grandey*, 217 F.2d at 29).

SGWS's subpoena is not invalid because it is addressed to "Mexcor, International," rather than "Mexcor, Inc."  Ex. 1, Ex. 2.  Mexcor attempts to use this

immaterial difference to invalidate the entire subpoena, relying on a single outdated, unpersuasive, and factually inapposite case.  Ex. 5.  But there is no doubt as to who was intended to be served; the omission of "Inc." does not mislead anyone.  *Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 224 (4th Cir. 1999) ("The lack of the abbreviation 'Inc.' misled no one… The absence of an appropriate 'Inc.' is likewise irrelevant"); *United States v. Lasco Indus., Div. of Phillips Indus., Inc.,* 531 F. Supp. 256, 261-62 (N.D. Tex. 1981) (describing the distinction between "Lasco Industries, Inc.," and "Lasco Industries, Division of Phillips Industries, Inc.," as frivolous).  Mexcor regularly refers to itself as Mexcor International, including on its own website.[2]  Further, Mexcor accepted service and has communicated with SGWS on the subpoena.  There is no confusion or prejudice.

### (b)    SGWS's Requests Are Relevant

At the discovery stage, the threshold of relevance is low, and relevance is construed broadly.  *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011).  Where relevance is in doubt, a court should be permissive in allowing discovery unless it is clear the information sought can have *no possible bearing* on the issues of the case.  *Id.*  The party resisting discovery carries the burden to show specifically how each request is irrelevant.  *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

Mexcor argues the information SGWS requests is not relevant "to the claim or defense of any party" in the lawsuit.  Ex. 5.  This conclusory objection is incorrect and

---

[2]    Mexcor International, https://mexcor.com/ (last accessed Feb. 9, 2026).

fails to satisfy Mexcor's burden to rebut the presumption in favor of broad discovery. SGWS's requests are relevant to all aspects of its case.

*First*, the requested documents are relevant to SGWS's statutory defenses of meeting competition and cost justification. To make out a meeting-competition defense, SGWS must show "the existence of facts which would lead a reasonable and prudent person to believe that the granting of a lower price would in fact meet the equally low price of a competitor." *Great Atl. & Pac. Tea Co. v. FTC*, 440 U.S. 69, 82 (1979) (citation omitted). "A good-faith belief, rather than absolute certainty, that a price concession is being offered to meet an equally low price offered by a competitor is sufficient to satisfy the § 2(b) defense." *Id*. (citations omitted); *see also United States v. U.S. Gypsum Co.*, 438 U.S. 422, 454 (1978) ("[G]ood faith is a flexible and pragmatic, not technical or doctrinaire, concept") (citation omitted). Several of SGWS's requests relate to Mexcor's pricing data, which will provide foundation for SGWS's meeting competition defense. *See* Ex. 1, Requests 1, 3, 7-9, and 12-13.

Mexcor cannot oppose discovery on the grounds that SGWS must have been aware of Mexcor's prices for those prices to be relevant. A good-faith belief that a competitor was offering a lower price is sufficient for a meeting competition defense. *Water Craft Mgmt. LLC v. Mercury Marine*, 457 F.3d 484, 489 (5th Cir. 2006) (explaining that a good-faith belief of price discrimination is sufficient for a meeting-competition defense, as the inquiry is "flexible and pragmatic" rather than requiring absolute certainty, and the defense may be satisfied even by efforts short of interseller verification); *see also Uinta Oil Ref. Co. v. Cont'l Oil Co.*, 36 F.R.D. 176, 180-81 (D.

13

Utah 1964) (stating it "may well be" that the meeting competition "defense does not require a competitor to have actual knowledge of the identity and price of the competitor whose price is being met" and "pricing data…are clearly relevant" to discovery).

Further, federal courts have permitted antitrust defendants to subpoena competitors' purchase, sales, and pricing data to prepare a meeting competition defense. *See, e.g.*, *Uinta Oil*, 36 F.R.D. at 180-81 (denying non-party competitor's motion to quash defendant's subpoena seeking purchase and sales prices); *Covey Oil Co. v. Cont'l Oil Co.*, 340 F.2d 993, 997 (10th Cir. 1965) ("The wholesale price and volume of admitted competitors directly pertain to both the Sherman Act and the Robinson-Patman Act charges and to the defenses asserted against those charges"); *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, 2025 WL 2432665, at *2 (N.D. Tex. Aug. 22, 2025) (ordering competitor to provide responses to various interrogatories including revenue, expenses, and basis for market share calculations, as "broad discovery for a defendant is necessary to defend against conspiracy or monopolization allegations and damages.").

It is of no consequence that Mexcor and SGWS distribute different products. Generally, because of exclusivity agreements, there is only one distributor of an alcohol product in a given state. But different alcohol products compete[3] and the prices of

---

[3]   *See generally* Daniel M. Micu et al., *Competitive Advantage in the World of Wine – An Analysis of Differentiation Strategies Developed by Sectoral Brands in the Global Market*, Foods (May 22, 2025), available at https://www.mdpi.com/2304-8158/14/11/1858 (last accessed Feb. 9, 2026) (describing how global wine markets are "highly competitive," and providing examples of how wine brands attempt to differentiate to gain a competitive advantage); Bartender Spirits Awards, *Competition in the Spirits Industry: A Primer*, https://bartenderspiritsawards.com/en/blog/insights-1/competition-in-the-spirits-industry-a-primer-603.htm (last accessed Feb. 9, 2026)

competing products are relevant.  A Texas customer considering pineapple vodka at Total Wine & More in Houston can choose between purchasing the Brackish pineapple vodka Mexcor distributes (750 ml, $26.99) and the Cîroc pineapple vodka SGWS distributes (750 ml, $27.99).[4]  Likewise, retailers negotiating with SGWS and Mexcor can play those products against one another to achieve the best price.

SGWS's requests are also relevant to SGWS's cost-justification defense.  *See, e.g.*, Ex. 1 Requests 5 and 6.  The RPA exempts as legal price "differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered."  15 U.S.C. § 13(a).  SGWS seeks to prove that the differences in prices that it charges to its chain retail customers and independent retailers are justified by cost savings and consistent with industry practice.  The data SGWS requests about costs in the industry will support SGWS's argument that its price differentials are justified by the costs of goods sold by showing SGWS's competitors' prices account for cost in a similar manner.

---

(describing competition between established, heritage spirits brands and emerging craft distilleries).

[4]  Brackish Pineapple Vodka, Total Wine & More – Houston (Memorial), https://www.totalwine.com/spirits/vodka/flavored-vodka/pineapple/brackish-pineapple-vodka/p/2126255259?s=517&igrules=true (last accessed Feb. 9, 2026) and Cîroc Vodka Pineapple, Total Wine & More – Houston (Memorial), https://www.totalwine.com/spirits/vodka/flavored-vodka/pineapple/ciroc-vodka-pineapple/p/142456750?s=517&igrules=true (last accessed Feb. 9, 2026); Texas Distribution Portfolio, Mexcor, https://mexcor.com/distribution/texas-distribution-portfolio/ (last accessed Feb. 9, 2026).

*Second*, SGWS's requests are relevant to SGWS's rebuttal of the FTC's prima facie case. To sustain an RPA claim, the FTC must show that SGWS's pricing practices had an anti-competitive effect on the market. *See Volvo*, 546 U.S. at 176. The FTC alleges injury by pairing transactions from two retailers—one favored and one disfavored—and pointing to differences in SGWS's prices to those retailers. SGWS believes several of the retailers the FTC pairs are not in competition and therefore any difference in prices charged to them would not violate the RPA. Information produced in response to SGWS's requests—including information on the array of products sold to retailers, volumes, and prices—will help show various classes of retailers have different business models, order to meet different needs, and do not necessarily compete for the same end customer by virtue of selling alcohol. *See* Ex. 1, Requests 1, 6-8.

*Third*, Requests 13 and 14 relating to post-and-hold laws and "come to rest" laws will inform SGWS's jurisdictional argument that distributors' beverage alcohol sales do not cross state lines and so fail to trigger the RPA, which applies only to interstate commerce.

Mexcor makes no credible argument why its documents are not relevant to SGWS's underlying case. It alleges documents "related to Mexcor's supplier relationships, costs of goods, business dealings, and other sensitive business information crucial to Mexcor's operations" is "not relevant to the claim or defense of any party," without providing any explanation or support for its claim. *See* Ex. 5. SGWS and Mexcor compete for the same end customers in Texas and California (two of five states FTC focused on in its complaint) among other states, making Mexcor's documents

critical to SGWS's ability to prove its case.  The Court should find Mexcor's documents are relevant.

> **(c)     SGWS's Requests Are Not Overbroad or Unduly Burdensome and Expensive**

Mexcor cannot refuse to produce any documents based on conclusory claims of burden.  *See* Ex. 5 (claiming the subpoena is "overly broad, imposes an undue burden and expense on Mexcor").  Objections of undue burden "must show specifically how each request is not relevant or otherwise objectionable."  *Briones v. Kinder Morgan, Inc.*, 2016 WL 6804862, at *2 (S.D. Tex. Nov. 17, 2016).  Broad, non-specific objections are unacceptable, as they are almost impossible to assess on the merits.  *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009).  Rather, the party resisting discovery has the burden to show specifically how each request is overly broad, burdensome, or oppressive.  *McLeod,* 894 F.2d at 1485.  Notably, "[s]erving unsupported and boilerplate or stock objections does not preserve or accomplish anything other than waiver and subjecting the responding party to sanctions."  *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, 2025 WL 2432665, at *1 (N.D. Tex. Aug. 22, 2025) (quoting *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 582 (N.D. Tex. 2018)).

Mexcor has not provided any specifics about the cost or time needed to produce documents in response to the subpoena that would substantiate its burden claim.  Mexcor therefore cannot meet its burden of showing that the subpoena is overbroad or unduly burdensome.

Moreover, Mexcor had multiple opportunities to engage with SGWS about ways to potentially narrow SGWS's requests and declined to do so. SGWS met and conferred with Mexcor three times before filing this motion. Each time, SGWS expressed willingness to engage in good faith about ways to narrow its requests. Mexcor refused, instead objecting to the subpoena in its entirety. *See* Ex. 3, Ex. 4, Ex. 5. This Court should not reward Mexcor for its unwillingness to engage with SGWS to resolve its concerns about burden and breadth outside of the courtroom.

### (d)     Mexcor's Documents Are Not Available from Another Source

Mexcor's documents are also not available from another source. Mexcor contends some of SGWS's production requests seek information "equally available to the Defendant to the extent that they call for Mexcor to provide information on prices offered by Retailers and Distributors." Ex. 5. This argument is incorrect. SGWS's subpoena seeks information regarding the prices *Mexcor* is charging retailers or being charged by suppliers. SGWS does not have that information. As Mexcor claims—in the same paragraph it asserts SGWS has access to its pricing information—such information constitutes "trade secret or other confidential information protected from disclosure." Ex. 5. SGWS could try and piece together Mexcor's pricing information by serving subpoenas to end retailers and alcohol suppliers, but this would waste significantly more time and resources. Mexcor itself is the only centralized source of the critical information SGWS needs to properly defend itself against the FTC. The Court should not allow Mexcor to avoid its discovery obligations by pointing the finger at other parties.

(e)    **SGWS's Requests Are Proportional to the Needs of the Case**

SGWS's subpoena requests are proportional to the broad case the FTC has brought.  Proportionality is determined by "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Chapa v. Am. Airlines Grp., Inc.*, 2022 WL 7710553, at *2 (S.D. Tex. Sept. 7, 2022) (quoting Fed. R. Civ. P. 26(b)(1)).  SGWS seeks information relevant to key elements of the FTC's case and SGWS's defenses.  To the extent Mexcor perceives the requests as broad, they are proportional to FTC's allegations which challenges millions of sales, over an eight-year period for thousands of different products.

Each proportionality factor favors production.  The stakes of this case are high: the FTC seeks to enjoin, on a nationwide basis, SGWS's pricing practices that are common in the industry.  Such an injunction would require SGWS to radically change its business practices and will harm consumers by increasing prices.  Discovery from competitors is crucial for resolving issues in this case, such as whether SGWS's pricing practices are consistent with those of its competitors, pro-competitive, and geared toward meeting competition.

(f)    **The Protective Order Alleviates Mexcor's Confidentiality Concerns**

Finally, Mexcor cannot refuse to produce documents on the basis that the information sought is confidential.  Confidentiality "is not a basis upon which discovery

can be resisted." *Fed. Trade Comm'n ex rel. Yost v. Educare Ctr. Servs., Inc.*, 2020 WL 4334119, at \*7 (W.D. Tex. Apr. 15, 2020) (citing *A.H. Robins Co. v. Fadely*, 299 F.2d 557, 561 (5th Cir. 1962)) (ordering production of pricing and sales information despite claims of confidentiality).    There is a Protective Order entered by the Court that adequately protects any confidentiality concerns, which is sufficient to address parties' confidentiality concerns.  *See, e.g., Infernal Tech., LLC v. Microsoft Corp.*, 2019 WL 5388442, at \*2 (E.D. Tex. May 3, 2019) (granting the motion to compel because "there is no reason… confidential information cannot be adequately protected via the Protective Order"); *Mirror Worlds Techs., LLC v. Apple Inc.*, 2016 WL 4265758, at \*1 (E.D. Tex. Mar. 17, 2016) (noting the protective order adequately addresses confidentiality concerns); *Dveirin v. State Farm Fire & Cas. Co.*, 2025 WL 306333, at \*9-10 (E.D. La. Jan. 27, 2025) (ordering invoices and payment logs with third parties to be produced as the protective order sufficiently addresses any proprietary or confidentiality concerns); *Civic Ctr. Site Dev., LLC v. Certain Underwriters at Lloyd's London (Consortium #9226)*, 2023 WL 5974843, at \*9-10 (E.D. La. Sept. 14, 2023) (overruling confidentiality objections in light of the protective order).  Thus, Mexcor's concern over trade secret or other confidential information is unfounded.

## CONCLUSION

For all these reasons, SGWS respectfully requests that the Court grant the motion to compel and require Mexcor to produce documents responsive to SGWS's subpoena.

Dated this 9th day of February, 2026.


*/s/ Matthew S. Owen*

Matthew S. Owen, P.C.
matt.owen@kirkland.com
Attorney-in-charge
Texas Bar No. 24081078
S.D. Texas Bar No. 3599188
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: 202-389-5943
Fax: 202-389-5200


Of counsel
**KIRKLAND & ELLIS LLP**

T.J. McCarrick (*pro hac vice forthcoming*)
tj.mccarrick@kirkland.com
K. Ross Powell (*pro hac vice forthcoming*)
ross.powell@kirkland.com
1301 Pennsylvania Ave, NW
Washington, D.C. 20004
Telephone: 202-389-5000

# CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of February 2026, the following attorney was served by electronic email, who had previously agreed to accept service in this manner.

Andrew C. Wright
Buck Keenan LLP
2229 San Felipe Street, Suite 1000
Houston, TX 77019
wright@buckkeenan.com

Dated this 9th day of February, 2026.

*/s/ Matthew S. Owen*

Matthew S. Owen, P.C.
matt.owen@kirkland.com
Attorney-in-charge
Texas Bar No. 24081078
S.D. Texas Bar No. 3599188
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: 202-389-5943
Fax: 202-389-5200

Of counsel
**KIRKLAND & ELLIS LLP**

T.J. McCarrick (*pro hac vice forthcoming*)
tj.mccarrick@kirkland.com
K. Ross Powell (*pro hac vice forthcoming*)
ross.powell@kirkland.com
1301 Pennsylvania Ave, NW
Washington, D.C. 20004
Telephone: 202-389-5000